This appeal has three parts to it. The first part is whether, in fact, the actions by the company were just isolated comments made to Mr. Treadwell. The other part is whether the court's granting of the motion for summary judgment on retaliation was actually based on some real facts. And the third aspect of the appeal is whether the dismissal of Lt. Wilson was proper. Getting to the first issue of the comments being isolated... You're talking now about the judgment that was rendered after a bench trial. That's correct, Your Honor. All of those comments, all of those actions, leads me to think, to wonder, after how many comments, or even after one comment, were made to somebody based on their race of such a derogatory nature. It isn't just saying, oh, I think you're stupid. But basically going to the core of somebody, whether they're a female, whether they're of some religious persuasion, that that does not have an effect on the person who it's being said to. Well, it may very well, and I'm sure it does, but the standard is pervasive. Well, how pervasive does it need to be in order to go to... Probably more than one. Well, even one, as in the D case, even one in the D case. But how pervasive does it have to go to show that that person who said that to you has such disregard for you just because of your race, just because of your religion, just because you're a female? Let me put the question slightly differently. Where did the district court clearly err in its finding? By saying that the comments were isolated. These were not isolated comments. They were continuous, continuous, continuous. And how many times do you have to tell somebody that because they're black, they're not worth as much as you are because you're white? How many times does it have to be said to somebody to get the impression that that person means what they're saying? The question is whether it created a pervasively abusive work environment. I'm sorry? The question is whether it created a pervasively abusive, let me finish the question, work environment, and to a certain extent that has a subjective component in terms of its effect on the employee. And the trial judge said here, first of all, there was immediate, there was at least when he complained about it, the supervisor took action to stop it, and that Mr. Treadwell did not contact him again to report any racially harassing conduct or remarks, and that if Bartlett's racially harassing conduct had been so severe or pervasive that it altered the conditions of his work, Treadwell would have complained at an earlier point in time. He goes on to say he had a good relationship with, I'll call him Mr. Z for the moment, and that he was not shy about complaining. And he said the fact that he chose to remain silent for so long indicates that other motives, such as favoritism for Wilson, played a part in causing Mr. Treadwell to complain in the first instance. Well, the fact is, you know, why he didn't complain, maybe he needed his job. He was complaining to Bartlett, and Bartlett was the supervisor. He also complained to Mr. Z. Yes, and Mr. Z was the regional manager. In other words, it got to the point where it was so bad with Bartlett that he went up to Z. And Z took action, and presumably Z was also the one who terminated him. Yes, based on Bartlett's statement of what he did or supposedly did at the mall when he had the mother of his child served with that document. And then we get back to the court then finding, during the trial, that Bartlett was not believable. And also saying, to some effect, that Z was not even credible. You're kind of mixing these all up now. I understand. Can we just finish this first point that you and Judge Corman and Judge Reimer were talking about? Your client, none of us is going to tell you what your client felt. We respect what you pled. But the reality is, the standard is whether this is a pervasive problem. Your client waited for two years to file anything about this. When he went to Z, Z did something about it, stopped it. I think the record's clear on that, is it not? It's not. What's wrong about that? It wasn't after two years it didn't stop, and then two years later he went and he reported to Z. It was continuing all the time, and up until the last time he went to Z. When was, all I show, I show these incidents, the last one occurred in 2003, started in 2002, finished in 2003. When was the complaint filed? When was what filed? The complaint filed with the FEHC, I mean with the Department of Fair Employment and Housing. I'm not sure, I don't have it in front of me. It was two years later, or longer. Well, the complaint, the fact that because he was terminated. I guess our problem is we have to look at these things as component parts. One is whether there's a pervasive environment created in the business. And what we see on the record, it seems to me, is no question that some very, very unfortunate and inappropriate things were said. The supervisor chastised Bartlett. They stopped. Your client said nothing further, according to what I know of the record, until two years later. So can we agree that the district court was at least in the ballpark in trying to determine whether there was a pervasive environment at work of a racial harassment level? Because, listen, this whole severe and pervasive is very subjective. It's totally subjective. That's why we have a trial. Exactly. We're not looking at a summary judgment here. We're looking at the results of a bench trial where the district court heard all this stuff, saw all these people, and made a call that's within the district judge's province to make that this did not add up to a pervasively abusive environment, and in addition that Bartlett was an equal opportunity jerk. So, I mean, you know, he's just saying the district judge had all this in front of her. Okay, except that the judge based her ruling under the law. In other words, the judge looked at cases and said, oh, this doesn't add up to severe or pervasive. These are isolated comments. And what I'm asking you to do is to look at it and say, no, you know, that's not the law, because you, as your own person, can say. You're asking us to change the law. No, I'm not asking you to change the law. I'm asking you to look at the law and think about it in terms of what is a pervasive or severe incident. How many times do you have to be told that because you're black, you're not worth, you're worthless? How many times do you have to hear that in order for there to be a severe and or pervasive situation? Ms. Byron, if you want to reserve any time. Yeah, I will. I just want. So getting back to the just talking about the motion for summary for summary judgment retaliation. If you look at the facts, all of the times that he complained and then you look at this incident, it's ridiculous. There's no balancing there. They have no objectivity. They just fired him because, oh, we got we can get him out of here because of all those things. I reserve the rest of my time. Good morning, Your Honors. I'm Eric Amador on behalf of the police, IPC and Wilson. I think all these issues really have been addressed in the briefs and the court seems to be focused on the same issues that we have addressed. So I don't really have a great deal to say. And I know if the court has any questions, I'd be happy to answer them. But it seems to me that with regards to the bench trial issue, counsel is really arguing a summary judgment standard. And he's putting forth facts that he believes give rise to a tribal issue of fact that the trial judge would then have to resolve a trial. And that's exactly what Judge Morrow did. She denied summary judgment on the hostile work environment claims. She found that there was a tribal issue of fact that would go to trial. And then she held the trial. Now the D case that counsel cites involved a summary judgment ruling where the court found the same as Judge Morrow did. There were enough incidents to give rise to a tribal issue of fact. So the court went to trial. That's what happened here. This is not in conflict with D. But the Etter case upheld a trial or a jury verdict finding that the harassment was not severe or pervasive. That's consistent with here. We have a bench verdict or a bench decision finding, after considering the facts on both sides, that the harassment here was not severe or pervasive. So we're consistent with the case law that governs this issue. And the standard of review, as the court has noted, is whether the bench verdict or decision was clearly erroneous after the judge weighed all the facts.  And as counsel points out, she didn't believe Bartlett's denials of Bartlett's statements. And she didn't believe Mr. Zeradicka did not recall hearing Treadwell complain of what was happening. But even giving the benefit of the doubt to the plaintiff on both Bartlett's denials and Zeradicka's denials, even then she made a clear factual determination that the harassment here was not severe or pervasive. And that was not clearly erroneous. She very carefully weighed the facts. And really that's all I have to say. All right. Thank you. Mr. Amador, Mr. Meyer. I'm just going to quote something from Justice Reinhart. And that's because we all have to examine ourselves in terms of what we think. Who is Justice Reinhart? We know Judge Reinhart. Judge Reinhart. I'm sorry. You know there's no justice on the Ninth Circuit. I apologize for that. Judge Reinhart. As Judge Reinhart said, it's a different world now. We've regressed to the days before Earl Warren. He said that the court has busied itself ensuring procedural rulings that, quote, shut the doors of the court to minorities, the poor, and disenfranchised, adding that civil rights lawsuits are not welcome unless brought by whites. Thank you very much. Thank you, Mr. Earle. Amador, the matter just argued will be submitted. And we'll mix your argument and read the city of Beverly Hills.
judges: Rymer, Smith, Korman